SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV–14–261

| | |
|---|---|
| IN RE ARKANSAS BAR ASSOCIATION PETITION PROPOSING AMENDMENTS TO THE ARKANSAS RULES OF PROFESSIONAL CONDUCT | **Opinion Delivered** June 26, 2014 |

## PER CURIAM

The Arkansas Bar Association filed a petition with the court proposing to amend various rules of the Arkansas Rules of Professional Conduct. We published the proposed amendments for comment. *In re Ark. Bar Ass'n Petition Proposing Amendments to the Ark. R. Prof'l Conduct*, 2014 Ark. 162 (per curiam). We noted that the Bar Association reviewed changes that have been made to the American Bar Association Model Rules of Professional Conduct, upon which our rules are based, since our rules were adopted in 2005 to determine if any action was needed regarding our rules. *Id*.

The Bar Association recommended amendments to the following rules:

Rule 1.0: Revisions relating to e-mail and electronic communication.

Rule 1.1: Addition of two comments on using lawyers outside the firm.

Rule 1.4: Change from telephone calls to communications.

Rule 1.6: Addition of a provision permitting disclosure of information to detect and resolve conflicts of interests and a provision requiring reasonable efforts to prevent the inadvertent or unauthorized disclosure of confidentiality; three comments added.

SLIP OPINION

Rule 1.8(c): Addition of "spouse," which was inadvertently omitted in 2005.

Rule 1.17: Addition of cross-references.

Rule 1.18: Revisions to address the situation where a client communicates with a lawyer for the purpose of disqualifying the lawyer.

Rule 4.4: Revisions to cover electronically stored information.

Rule 5.3: Addition of two comments discussing the use of non-lawyers outside the firm, such as investigative services, document management companies, and printing and scanning services.

Rule 5.5: Minor changes.

Rule 7.1: Addition of comment relating to truthful statements in advertising.

Rule 7.2: Revisions relating to electronic communication and email.

Rule 7.3: Revisions for clarity relating to solicitation of clients and use of electronic communication for that purpose.

The changes to these rules are illustrated in our earlier per curiam order.

No comments were submitted in response to our per curiam order. In its petition, the Bar Association stated that it considers the recommendations to be noncontroversial and that there was unanimity for them within the Association. We have studied the Bar Association's recommendations and accept them. Accordingly, the following amendments to the Rules of Professional Conduct are adopted, effective immediately, and the rules are republished.



**ARKANSAS RULES OF PROFESSIONAL CONDUCT**

**Rule 1.0.     Terminology.**

. . . .

(n) "Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording and electronic communications. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

*Comment:*

. . . .

[9] The purpose of screening is to assure the affected parties that confidential information known by the personally disqualified lawyer remains protected. The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other information, including information in electronic form, relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other materials relating to the matter and periodic reminders of the screen to the screened lawyer and all other firm personnel.

. . . .

**Rule 1.1.     Competence.**

**A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.**

*Comments*:

. . . .

*Retaining or Contracting With Other Lawyers*

[6]  Before a lawyer retains or contracts with other lawyers outside the lawyer's own firm to provide or assist in the provision of legal services to a client, the lawyer should ordinarily obtain informed consent from the client and must reasonably believe that the other lawyers' services will contribute to the competent and ethical representation of the client. See also Rules 1.2 (allocation of authority), 1.4 (communication with client), 1.5(e) (fee sharing), 1.6 (confidentiality), and 5.5(a) (unauthorized practice of law).  The reasonableness of the decision to retain or contract with other lawyers outside the lawyer's own firm will depend upon the circumstances, including the education, experience and reputation of the nonfirm lawyers; the nature of the services assigned to the nonfirm lawyers; and the legal protections, professional conduct rules, and ethical environments of the jurisdictions in which the services will be performed, particularly relating to confidential information.[7]  When lawyers from more than one law firm are providing legal services to the client on a particular matter, the lawyers ordinarily should consult with each other and the client about the scope of their respective representations and the allocation of responsibility among them. See Rule 1.2. When making allocations of responsibility in a matter pending before a tribunal, lawyers and parties may have additional obligations that are a matter of law beyond the scope of these Rules.

*Maintaining Competence*

[8] To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology, engage in continuing study and education, and comply with all continuing legal education requirements to which the lawyer is subject.


**Rule 1.4.    Communication.**


**(a) A lawyer shall:**


**(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules.**


**(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;**


**(3) keep the client reasonably informed about the status of the matter;**

**(4) promptly comply with reasonable requests for information; and**

**(5) consult when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.**

**(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.**

**(c) A lawyer shall promptly notify a client in writing of the actual or constructive receipt by the attorney of a check or other payment received from an insurance company, an opposing party, or from any other source which constitutes the payment of a settlement, judgment, or other monies to which the client is entitled.**

*Comment*:

. . . .

[4] A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. A lawyer should promptly respond to or acknowledge client communications.

. . . .

**Rule 1.6. Confidentiality of Information.**

**(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).**

**(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:**

**(1) to prevent the commission of a criminal act;**

**(2) to prevent the client from committing a fraud that is reasonably certain to result in injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;**

**(3) to prevent, mitigate or rectify injury to the financial interest or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;**

**(4) to secure legal advice about the lawyer's compliance with these Rules;**

**(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;**

**(6) to comply with other law or a court order; or**

**(7) to detect and resolve conflicts of interest between lawyers in different firms, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.**

**(c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.**

**(d) Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation or the like.**

*Comment:*

. . .

[13] Paragraph (b)(7) recognizes that lawyers in different firms may need to disclose limited information to each other to detect and resolve conflicts of interest, such as when a lawyer is considering an association with another firm, two or more firms are considering a merger, or a lawyer is considering the purchase of a law practice. See Rule 1.17, Comment [7]. Under these circumstances, lawyers and law firms are permitted to disclose limited information, but only once substantive discussions regarding the new relationship have occurred. Any such disclosure should ordinarily include no more than the identity of the persons and entities involved in a matter, a brief summary of the general issues involved, and

SLIP OPINION

information about whether the matter has terminated. Even this limited information, however, should be disclosed only to the extent reasonably necessary to detect and resolve conflicts of interest that might arise from the possible new relationship. Moreover, the disclosure of any information is prohibited if it would compromise the attorney-client privilege or otherwise prejudice the client (e.g., the fact that a corporate client is seeking advice on a corporate takeover that has not been publicly announced; that a person has consulted a lawyer about the possibility of divorce before the person's intentions are known to the person's spouse; or that a person has consulted a lawyer about a criminal investigation that has not led to a public charge). Under those circumstances, paragraph (a) prohibits disclosure unless the client or former client gives informed consent. A lawyer's fiduciary duty to the lawyer's firm may also govern a lawyer's conduct when exploring an association with another firm and is beyond the scope of these Rules.

[14] Any information disclosed pursuant to paragraph (b)(7) may be used or further disclosed only to the extent necessary to detect and resolve conflicts of interest. Paragraph (b)(7) does not restrict the use of information acquired by means independent of any disclosure pursuant to paragraph (b)(7). Paragraph (b)(7) also does not affect the disclosure of information within a law firm when the disclosure is otherwise authorized, see Comment [5], such as when a lawyer in a firm discloses information to another lawyer in the same firm to detect and resolve conflicts of interest that could arise in connection with undertaking a new representation.

[15] A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order.

[16] Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

[17] Paragraph (b) permits but does not require the disclosure of information relating to a client's representation to accomplish the purposes specified in paragraphs (b)(1) through (b)(6). In exercising the discretion conferred by this Rule, the lawyer may consider such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. A lawyer's decision not to disclose as permitted by paragraph (b) does not violate this Rule. Disclosure may be required, however, by other Rules. Some Rules require disclosure only if such disclosure would be permitted by paragraph (b). See Rules 1.2(d), 4.1(b), 8.1 and 8.3. Rule 3.3, on the other hand, requires disclosure in some circumstances regardless of whether such disclosure is permitted by this Rule. See Rule 3.3(c).

*Acting Competently to Preserve Confidentiality*

[18] Paragraph (c) requires a lawyer to act competently to safeguard information relating to the representation of a client against unauthorized access by third parties and against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision. See Rules 1.1, 5.1 and 5.3. The unauthorized access to, or the inadvertent or unauthorized disclosure of, information relating to the representation of a client does not constitute a violation of paragraph (c) if the lawyer has made reasonable efforts to prevent the access or disclosure. Factors to be considered in determining the reasonableness of the lawyer's efforts include, but are not limited to, the sensitivity of the information, the likelihood of disclosure if additional safeguards are not employed, the cost of employing additional safeguards, the difficulty of implementing the safeguards, and the extent to which the safeguards adversely affect the lawyer's ability to represent clients (e.g., by making a device or important piece of software excessively difficult to use). A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to forgo security measures that would otherwise be required by this Rule. Whether a lawyer may be required to take additional steps to safeguard a client's information in order to comply with other law, such as state and federal laws that govern data privacy or that impose notification requirements upon the loss of, or unauthorized access to, electronic information, is beyond the scope of these Rules. For a lawyer's duties when sharing information with nonlawyers outside the lawyer's own firm, see Rule 5.3, Comments [3]-[4].

[19] When transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients. This duty, however, does not require that the lawyer use special security measures if the method of communication affords a reasonable expectation of privacy. Special circumstances, however, may warrant special precautions. Factors to be considered in determining the reasonableness of the lawyer's expectation of confidentiality include the sensitivity of the information and the extent to

which the privacy of the communication is protected by law or by a confidentiality agreement. A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to the use of a means of communication that would otherwise be prohibited by this Rule. Whether a lawyer may be required to take additional steps in order to comply with other law, such as state and federal laws that govern data privacy, is beyond the scope of these Rules.

*Former Client*

[20] The duty of confidentiality continues after the client–lawyer relationship has terminated. See Rule 1.9(c)(2). See Rule 1.9(c)(1) for the prohibition against using such information to the disadvantage of the former client.

**Rule 1.8.  Conflict of Interest: Current Clients: Specific Rule.**

. . . .

**(c)      A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client.  For purposes of this paragraph, related persons include the spouse or a person within the third degree of relationship to the lawyer or the client.  The following persons are relatives within the third degree of relationship: Great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grand child, nephew or niece.**

. . . .

**Rule 1.17.  Sale of Law Practice.**

**A lawyer or a law firm may sell or purchase a law practice, or an area of law practice, including good will, if the following conditions are satisfied:**

**(a)      The seller ceases to engage in the private practice of law, or in the area of practice that has been sold, in the State in which the practice has been conducted;**

**(b)      The practice, or the entire area of practice, is sold to one or more lawyers or law firms;**

SLIP OPINION

(c)     The seller gives written notice to each of the seller's clients regarding:

(1)     the proposed sale;

(2)     the client's right to retain other counsel or to take possession of the file; and,

(3)     the fact that the client's consent to the sale will be presumed if the client does not take any action or does not otherwise object within ninety (90) days of receipt of the notice.

If a client cannot be given notice, the representation of that client may be transferred to the purchaser only upon entry of an order so authorizing by the court having jurisdiction.  The seller may disclose to the court in camera information relating to the representation only to the extent necessary to obtain an order authorizing the transfer of a file.

(d)     The fees charged clients shall not be increased by reason of the sale.

(e)     In every instance in which a law practice in its entirety is sold, the selling attorney, or the legal representative thereof, in the case of a deceased, disabled or disappeared attorney, shall within twenty (20) days of the completion of the sale, file an affidavit with the Committee on Professional Conduct that he or she has complied with the requirements of notice contained within this provision, to include proof of publication, along with a list of clients so notified and an exemplar of such notice. Such affidavit shall also contain the address where communications may thereafter be directed to the affiant.

*Comment:*

. . . .

*Client Confidences, Consent and Notice*

[7]  Negotiations between seller and prospective purchaser prior to disclosure of information relating to a specific representation of an identifiable client no more violate the confidentiality provisions of Rule 1.6 than do preliminary discussions concerning the possible association of another lawyer or mergers between firms, with respect to which client consent is not required. See Rule 1.6(b)(7). Providing the purchaser access to detailed information relating to the representation, such as the client's file, however, requires client consent. The Rule provides that before such information can be disclosed by the seller to the purchaser the client must be given actual written notice of the contemplated sale, including the identity of the purchaser and must be told that the decision to consent or make other arrangements must

be made within 90 days. If nothing is heard from the client within that time, consent to the sale is presumed.

. . . .

**Rule 1.18.   Duties to Prospective Client.**

(a)     **A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.**

(b)     **Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.**

(c)     **A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).**

(d)     **When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:**

(1)     **both the affected client and the prospective client have given informed consent, confirmed in writing, or:**

(2)     **the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and**

(i)     **the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and**

(ii)     **written notice is promptly given to the prospective client.**

*Comment:*

11

[1] Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.

[2] A person becomes a prospective client by consulting with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter. Whether communications, including written, oral, or electronic communications, constitute a consultation depends on the circumstances. For example, a consultation is likely to have occurred if a lawyer, either in person or through the lawyer's advertising in any medium, specifically requests or invites the submission of information about a potential representation without clear and reasonably understandable warnings and cautionary statements that limit the lawyer's obligation, and a person provides information in response. See also Comment [4]. In contrast, a consultation does not occur if a person provides information to a lawyer in response to advertising that merely describes the lawyer's education, experience, areas of practice, and contact information, or provides legal information of general interest. Such a person communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client–lawyer relationship, and is thus not a "prospective client." Moreover, a person who communicates with a lawyer for the purpose of disqualifying the lawyer is not a "prospective client."

[3] It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client–lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Paragraph (b) prohibits the lawyer from using or revealing that information, except as permitted by Rule 1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.

[4] In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether or not to undertake a new matter should limit the initial consultation to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non–representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under Rule 1.7, then consent from all affected present or former clients must be obtained before accepting the representation.

[5] A lawyer may condition a consultation with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See Rule 1.0(e) for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.
 . . .

**Rule 4.4.     Respect for Rights of Third Persons.**

**(a)     In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.**

**(b)     A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender.**

*Comment:*

[1]  Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.

[2]  Paragraph (b) recognizes that lawyers sometimes receive a document or electronically stored information that was mistakenly sent or produced by opposing parties or their lawyers. A document or electronically stored information is inadvertently sent when it is accidentally transmitted, such as when an email or letter is misaddressed or a document or electronically stored information is accidentally included with information that was intentionally transmitted. If a lawyer knows or reasonably should know that such a document or electronically stored information was sent inadvertently, then this Rule requires the lawyer to promptly notify the sender in order to permit that person to take protective measures. Whether the lawyer is required to take additional steps, such as returning or deleting the document or electronically stored information, is a matter of law beyond the scope of these Rules, as is the question of whether the privileged status of a document or electronically stored information has been waived. Similarly, this Rule does not address the legal duties of a lawyer who receives a document that the lawyer knows or reasonably should know may have been inappropriately obtained by the sending person. For purposes of this Rule, "document or electronically stored information" includes, in addition to paper documents,

email and other forms of electronically stored information, including embedded data (commonly referred to as "metadata"), that is subject to being read or put into readable form. Metadata in electronic documents creates an obligation under this Rule only if the receiving lawyer knows that the metadata was inadvertently sent to the receiving lawyer.

[3] Some lawyers may choose to return a document or delete electronically stored information unread, for example, when the lawyer learns before receiving it that it was inadvertently sent. Where a lawyer is not required by applicable law to do so, the decision to voluntarily return such a document or delete electronically stored information is a matter of professional judgment ordinarily reserved to the lawyer. See Rules 1.2 and 1.4.

**Rule 5.3. Responsibilities Regarding Nonlawyer Assistance.**
**With respect to a nonlawyer employed or retained by or associated with a lawyer:**

**(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;**

**(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and**

**(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:**

**(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or**

**(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has the direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.**

*Comment:*

[1] Paragraph (a) requires lawyers with managerial authority within a law firm to make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance

that nonlawyers in the firm and nonlawyers outside the firm who work on firm matters act in a way compatible with the professional obligations of the lawyer. See Comment [1] to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of such nonlawyers within or outside the firm. Paragraph (c) specifies the circumstances in which a lawyer is responsible for the conduct of such nonlawyers within or outside the firm that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.

*Nonlawyers Within the Firm*

[2] Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.

*Nonlawyers Outside the Firm*

[3] A lawyer may use nonlawyers outside the firm to assist the lawyer in rendering legal services to the client. Examples include the retention of an investigative or paraprofessional service, hiring a document management company to create and maintain a database for complex litigation, sending client documents to a third party for printing or scanning, and using an Internet-based service to store client information. When using such services outside the firm, a lawyer must make reasonable efforts to ensure that the services are provided in a manner that is compatible with the lawyer's professional obligations. The extent of this obligation will depend upon the circumstances, including the education, experience and reputation of the nonlawyer; the nature of the services involved; the terms of any arrangements concerning the protection of client information; and the legal and ethical environments of the jurisdictions in which the services will be performed, particularly with regard to confidentiality. See also Rules 1.1 (competence), 1.2 (allocation of authority), 1.4 (communication with client), 1.6 (confidentiality), 5.4(a) (professional independence of the lawyer), and 5.5(a) (unauthorized practice of law). When retaining or directing a nonlawyer outside the firm, a lawyer should communicate directions appropriate under the circumstances to give reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer.

[4] Where the client directs the selection of a particular nonlawyer service provider outside the firm, the lawyer ordinarily should agree with the client concerning the allocation of responsibility for monitoring as between the client and the lawyer. See Rule 1.2. When making such an allocation in a matter pending before a tribunal, lawyers and parties may have additional obligations that are a matter of law beyond the scope of these Rules.

**Rule 5.5. Unauthorized Practice of Law; Multijurisdictional Practice of Law**.

**(a)** **A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.**
**(b)** **A lawyer who is not admitted to practice in this jurisdiction shall not:**

**(1)** **except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or**

**(2)** **hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.**

**(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:**

**(1)** **are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;**

**(2)** **are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;**

**(3)** **are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or**

**(4)** **are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.**

**(d)    A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:**

**(1)    are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires pro hac vice admission; or**

**(2)    are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.**

*Comment:*

[1] A lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice. A lawyer may be admitted to practice law in a jurisdiction on a regular basis or may be authorized by court rule or order or by law to practice for a limited purpose or on a restricted basis. Paragraph (a) applies to unauthorized practice of law by a lawyer, whether through the lawyer's direct action or by the lawyer assisting another person. For example, a lawyer may not assist a person in practicing law in violation of the rules governing professional conduct in that person's jurisdiction.

[2] The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See Rule 5.3.

[3] A lawyer may provide professional advice and instruction to nonlawyers whose employment requires knowledge of the law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies. Lawyers also may assist independent nonlawyers, such as paraprofessionals, who are authorized by the law of a jurisdiction to provide particular law-related services. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.

[4] Other than as authorized by law or this Rule, a lawyer who is not admitted to practice generally in this jurisdiction violates paragraph (b)(1) if the lawyer establishes an office or other systematic and continuous presence in this jurisdiction for the practice of law. Presence may be systematic and continuous even if the lawyer is not physically present here. Such a lawyer must not hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction. See also Rules 7.1(a) and 7.5(b).

...

[21] Paragraphs (c) and (d) do not authorize communications advertising legal services in this jurisdiction by lawyers who are admitted to practice in other jurisdictions. Whether and how lawyers may communicate the availability of their services in this jurisdiction is governed by Rules 7.1 to 7.5.

**Rule 7.1.  Communications Concerning a Lawyer's Services.**

**A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:**

**(a)      contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;**

**(b)      is likely to create an unjustified expectation about the results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the rules of professional conduct or other law;**

**(c)      compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or**

**(d)      contains a testimonial or endorsement.**

*Comment*:

[1] This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whatever means are used to make known a lawyer's services, statements about them should be truthful. The prohibition in paragraph (b) of statements that may create "unjustified expectations" would ordinarily preclude advertisements about the results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.

[2] Truthful statements that are misleading are also prohibited by this Rule. An advertisement that truthfully reports a lawyer's achievements on behalf of clients or former clients may be misleading if presented so as to lead a reasonable person to form an unjustified expectation that the same results could be obtained for other clients in similar matters without reference to the specific factual and legal circumstances of each case. Similarly, an unsubstantiated comparison of the lawyer's services or fees with the services or fees of other lawyers may be misleading if presented with such specificity as would lead a reasonable person to conclude that the comparison can be substantiated. The inclusion of an appropriate

disclaimer or qualifying language may preclude a finding that a statement is likely to create unjustified expectations or otherwise mislead the public.

**Rule 7.2.  Advertising.**

**(a)      Subject to the requirements of Rules 7.1 and 7.3, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor advertising, radio or television, or through written or electronic communication.**

**(b)      A copy or recording of an advertisement or communication shall be kept for five years after its last dissemination along with a record of when and where it was used.**

**(c)      A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertisements or communications permitted by this rule and may pay the usual charges for not-for-profit lawyer referral service or other legal service organization; and may pay for a law practice in accordance with Rule 1.17.**

**(d)      Any communication made pursuant to this Rule shall include the name of at least one lawyer who is licensed in Arkansas and who is responsible for its content, and shall disclose the geographic location of the office or offices of the attorney or the firm in which the lawyer or lawyers who actually perform the services advertised principally practice law.**

**(e)      Advertisements may include photographs, voices or images of the lawyers who are members of the firm who will actually perform the services. If advertisements utilize actors or other individuals, those persons shall be clearly and conspicuously identified by name and relationship to the advertising lawyer or law firm and shall not mislead or create an unreasonable expectation about the results the lawyer may be able to obtain. Clients or former clients shall not be used in any manner whatsoever in advertisements. Dramatization in any advertisement is prohibited.**

*Comment:*

[1] To assist the public in learning about and obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary to the tradition that a lawyer should not seek clientele. However, the public's need to know about legal services can be fulfilled in part through advertising. This

need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading, overreaching, or unduly intrusive.

[2] This Rule permits public dissemination of information concerning a lawyer's name or firm name, address, email address, website, and telephone numbers; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other information that might invite the attention of those seeking legal assistance.

[3] Questions of effectiveness and taste in advertising are matters of speculation and subjective judgment. Some jurisdictions have had extensive prohibitions against television and other forms of advertising, against advertising going beyond specified facts about a lawyer, or against "undignified" advertising. Television, the Internet and other forms of electronic communication are now among the most powerful media for getting information to the public, particularly persons of low and moderate income; prohibiting television, Internet, and other forms of electronic advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the information that may be advertised has a similar effect and assumes that the bar can accurately forecast the kind of information that the public would regard as relevant. But see Rule 7.3(a) for the prohibition against a solicitation through a real–time electronic exchange initiated by the lawyer.

. . .

**Rule 7.3.  Solicitation of Clients.**

**(a) A lawyer shall not by in-person, live telephone or real–time electronic contact solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:**

> **1. Is a lawyer; or**

> **2. Has a family, close personal, or prior professional relationship with the lawyer.**

**(b) Notwithstanding the prohibitions described in paragraph (a), a lawyer may solicit professional employment from anyone known to be in need of legal services in a particular matter by written communication. Such written communication shall:**

(1) include on the bottom left hand corner of the face of the envelope the word "Advertisement" in red ink, with type twice as large as that used for the name of the addressee;

(2) only be sent by regular mail;

(3) not have the appearance of legal pleadings or other official documents;

(4) plainly state in capital letters "ADVERTISEMENT" on each page of the written communication;

(5) begin with the statement that "If you have already retained a lawyer, please disregard this letter";

(6) include the following statement in capital letters: "ANY COMPLAINTS ABOUT THIS LETTER OR THE REPRESENTATION OF ANY LAWYER MAY BE DIRECTED TO THE SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT, C/O CLERK, ARKANSAS SUPREME COURT, 625 MARSHALL STREET, LITTLE ROCK, ARKANSAS 72201"; and,

(7) shall comply with all applicable rules governing lawyer advertising.

(c)     In death claims, the written communication permitted by paragraph (b) shall not be sent until 30 days after the accident.

(d) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication.

(e)     Even when otherwise permitted by this rule, a lawyer shall not solicit professional employment by written or recorded communication or by in-person or telephone contact if:

(1)     the subject of the solicitation has made known to the lawyer a desire not to be solicited by the lawyer;

(2)     the solicitation involves coercion, duress, harassment, fraud, overreaching, intimidation, or undue influence; or

**(3)     the subject of the solicitation is known to the lawyer to be represented in connection with the matter concerning the solicitation by counsel, except where the subject has initiated the contact with the lawyer.**

**(f)     Notwithstanding the prohibitions in paragraph (a), a lawyer may participate with a prepaid group legal service plan operated by an organization not owned or directed by the lawyer which uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.**

*Comment:*

[1] A solicitation is a targeted communication initiated by the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide legal services. In contrast, a lawyer's communication typically does not constitute a solicitation if it is directed to the general public, such as through a billboard, an Internet banner advertisement, a website or a television commercial, or if it is in response to a request for information or is automatically generated in response to internet searches.

[2] There is a potential for abuse when a solicitation involves direct in-person or live telephone contact by a lawyer with someone known to need legal services. These forms of contact subject a person to the private importuning of the trained advocate in a direct interpersonal encounter. The person, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and overreaching.

[3] This potential for abuse inherent in direct in-person, live telephone, or real-time electronic contact justifies its prohibition, particularly since lawyers have alternative means of conveying necessary information to those who may be in need of legal services. In particular, communications can be mailed or transmitted by email or other electronic means that do not involve real-time contact and do not violate other laws governing solicitations. These forms of communications and solicitations make it possible for the public to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the public to direct in-person or telephone persuasion that may overwhelm judgment.

[4] The use of general advertising and written communications to transmit information from the lawyer to the public rather than direct in-person, live telephone, or

real-time electronic solicitation, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 are permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person, live telephone or real-time electronic contact can be disputed and are not subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.

[5] There is far less likelihood that a lawyer would engage in abusive practices against a former client, or a person with whom the lawyer has a close personal or family relationship, or in situations where the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Nor is there a serious potential for abuse when the person contacted is a lawyer. Consequently, the general prohibition in Rule 7.3(a) and the requirements of Rule 7.3(b) are not applicable in those situations.

[6] But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress, harassment, fraud, overreaching, intimidation, or undue influence within the meaning of Rule 7.3(e)(2), or which involves contact with someone who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(e)(1) is prohibited. Moreover, if after sending a letter or other communication as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the recipient of the communication may violate the provisions of Rule 7.3(e).

[7] Letters of solicitation and their envelopes should be clearly marked "Advertisement." This will avoid the recipient perceiving that he or she needs to open the envelope because it is from a lawyer or law firm, only to find he or she is being solicited for legal services. With the envelope and letter marked "Advertisement," the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.

[8] Paragraph (c) allows targeted mail solicitation of potential plaintiffs or claimants in wrongful death causes of action, but only if mailed at least thirty days after the incident. This restriction is reasonably required by the sensitized state of the potential clients who may be grieving the loss of a family member, and the abuses which experience has shown exist in this type of solicitation.

[9] In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm

has regarding his or her particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient's matter if the lawyer does not.

[10] Lawyers who use direct mail to solicit employment from accident victims or their survivors normally find the names of these persons, whom they believe may need legal services, in accident reports, newspaper reports, television or radio news, or other publicly available information. Some accident victims later die from their injuries after the preparation of reports and news dissemination. In the event of such a death, an attorney, who relies in good faith upon all the reasonably and publicly available information which creates the appearance the victim is still alive at the time the lawyer sends a letter soliciting employment, is not in violation of the prohibition against sending written communications within thirty days in cases which may be the basis of wrongful death claims.

[11] This Rule is not intended to prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to people who are seeking legal service for themselves. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.

[12] The requirement in Rule 7.3(b) that certain communications be marked "Advertisement" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.

[13] Paragraph (f) of this Rule would permit an attorney to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization referred to in paragraph (f) must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (f) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these

organizations also must not be directed to a person known to need legal services in a particular matter, but is to be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(e). See 8.4(a).